And we'll hear the next case, United States v. Diaz. The next case is United States v. Diaz. Mr. Habib, take your time. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. Daniel Habib, federal defenders of New York, on behalf of Jose Diaz. This appeal presents suppression and sentencing. Your Honor, I'm curious, what is the status of Mr. Diaz? Is he incarcerated? Mr. Diaz is incarcerated and serving his sentence with a release date of September 2017. So this appeal presents suppression and sentencing issues. And with the Court's permission, I intend to focus this morning on suppression, in particular the question whether Officer Abar's search of Mr. Diaz can be justified as incident to a custodial arrest. It cannot. The Fourth Amendment does not permit a search incident to arrest, whereas here, but for the search, there was to be no arrest. Since Chimmel Now she had, on the facts, just so we're clear, she testified, the officer testified, that she intended to issue the summons. That's right. She did not intend to arrest him. Judge Furman made a factual finding, and that's at A-130, that at the time Officer Abar searched Diaz, she intended only to issue him a citation. She determined to arrest him only after finding the firearm in his pocket, and only because she found the firearm. And she arrested him, if I could just follow up with one question. She arrested him on the open container law? She arrested him for criminal possession of a weapon. Oh, criminal possession of a weapon. Correct. And subsequently, at the station house, issued him a citation for the open container law. I see. Okay. So the question is actually, the answer may be difficult, but the question sounds relatively simple, and that is, was it enough for her to have the intention to issue a summons rather than an arrest, rather than having issued a summons, having already issued a summons, rather than having arrested? As we see the question, the inquiry is whether at the time of the search, an arrest had been made, was in the process of being made, or was to be made. As a matter of fact, and Judge Furman's factual finding. Isn't the situation evolving? In other words, yes, her intent was just to issue a citation, but then something happened, which caused her to be concerned. I mean, why couldn't things change as the situation evolved? Of course, police-citizen encounters evolve as they progress. But again, at the relevant time, at the time of the search, and that's what the Supreme Court's precedents since Terry and including Robinson have instructed, is the relevant time, the moment. No, but at the time, right before the search, right before the search, she noticed something that gave her concern. She noticed him rearranging his waistband. She noticed him being hesitant in giving the ID, doing something with the jacket. And so that caused her to have some greater concern. I mean, why isn't it reasonable in a circumstance where the two officers are in the stairwell with three guys in a confined space? It's fraught with risk. Was it unreasonable for her to then decide to frisk him? Two responses to that, Your Honor. First, as a matter of fact, Judge Furman found the following. That Mr. Diaz complied with all of Officer Ibarra's instructions. He rose from the stairs at her request. He moved to the wall at her request. And when she asked him for identification, he reached in the place where anyone would look to produce it, his pocket. Judge Furman expressly declined to credit Officer Ibarra's testimony that Diaz refused to provide identification, and the government has not contested that finding as clearly erroneous. But to the heart of— Wait, wait, wait. Just so we can look at this analytically. Your point basically is that Knowles said that you can't justify an arrest, a search by a subsequent arrest, if you didn't intend to arrest in the first place. That's right. Whether or not you issue a summons, intend to issue a summons, summonses are not arrests. That's right. So that's Knowles, which then cast into doubt Rawlings and, in our case, Ricard. So—and then the question is—and he distinguished that case on the basis of the fact that that was a car situation. But you have a plausible argument, certainly, that Knowles governs this case, and therefore this can't be a search incident to arrest. But to go to Judge Chin's point, why isn't this a Terry stop on the basis of suspicion, reasonable suspicion, leading to a—independently of any arrest? You know, he's acting furtively. He's working with his waistband. The officers are in a difficult situation. And, therefore, they need to protect themselves against the possibility of harm, and so they do a frisk, a frisk. And this is what ends—then they end up finding the gun. So— Leave arrest out of it. Leave search incident to arrest out of it. Why isn't this just a straightforward Terry stop? Absolutely. So Judge Furman said that he was swiftly rejecting that argument below. Fine. The government— I don't do that. Absolutely. For a title, I have a different view. And the government— Why? That's the question. Of course. And the government has abandoned that argument on appeal. The reasons are that it was quite clear in the district court that this was not a permissible Terry frisk. So to repeat my answer— Why was that? Because the only facts that could give rise— So, obviously, a Terry frisk requires reasonable suspicion that Mr. Diaz was armed and presently dangerous. Everything he did in the stairwell— No reasonable suspicion to believe that he was—that there could have been criminal activity afoot. No, Your Honor. A Terry stop is justified on the ground of reasonable suspicion to believe there's criminal activity. The further intrusion of a Terry frisk required reasonable suspicion that he was armed in particular. And so Judge Furman was correct to swiftly reject that argument because everything that Mr. Diaz did, he did in response to Officer Ibarra's instructions. He moved from the stairs to the wall. In response to her request to produce identification, he reached to his pocket. According to the record, apparently, he acted strangely. He acted furtively. He was delayed in giving the — in giving the — turning over the I.D. Why wasn't — why weren't the officers reasonably concerned for their safety under those circumstances? Wouldn't you have been? I mean, in a stairwell where you're outnumbered and you've got a situation like this? So, again, and I would encourage the Court to look at Judge Furman's analysis of this issue. There is not a factual finding that Diaz behaved furtively. That was the officer's characterization. What Judge Furman found was that Mr. Diaz moved to the wall as instructed, as all of the men in the stairwell did. The only part of the officer's testimony that Judge Furman declined to credit was that Diaz refused to give his I.D. That's right. Which is something she said, I guess, on redirect. But he doesn't, you know, reject the earlier testimony that she was concerned, including rearranging his waistband. So Mr. Diaz touched his waistband a single time, Judge Furman found. And I'll direct the Court to A128, where Judge Furman's factual findings on this point appear. When Diaz was by the wall, Officer Ibarra — Where are you reading from? I'm sorry, Your Honor. This is A128. This is the district court's order denying the motion to suppress. He also touched or rearranged his waistband. That's right. And that's the single fact. Well, he began fumbling in the pockets of his jacket. Officer Ibarra felt unsafe. Those are all findings. As to the fumbling in the jacket, that's in response to Officer Ibarra's request that he produce identification. And again, Your Honor is correct that the portion of Officer Ibarra's testimony Judge Furman declined to credit was that he refused to produce I.D. And so in the context of that finding, when the Court concludes that Diaz reached into his pocket, the necessary implication is that he was doing it for the natural reason of providing I.D. As to the finding that Officer Ibarra felt unsafe, of course, Terry itself says that the inquiry is objective and the officer's subjective fears are — If the inquiry is objective, I mean, do we even look at the fact that she subjectively decided to only give him a summons? Or do we look at what an objective police officer would have done in the circumstance? So the inquiry that's appropriate in answering — If we accept the premise that Knowles requires a custodial arrest to invoke the incident search doctrine, in answering the subsidiary question whether an arrest was occurring or about to occur, we undertake what this Court in Heath said was an objective inquiry. We consider the nature of the offense as to which probable cause existed, the strength of the evidence. A significant difference in that in Knowles, the officer had already written the citation. In other words, the deed was done, the decision had been made, whereas here and also in Ricard, the officer had not yet written the summons, had decided perhaps to do so. But again, it's this evolving situation that concerns me. So I would say two things in response to that. First, I think the principle that we draw from Knowles is that where there is no custodial arrest and no custodial arrest is to be made, a search cannot be justified as incident to arrest because it's responsive to neither of the Chimmel rationales. But I'll secondly say this. If that's — I was just going to say, when you say to be made, isn't that a subject of inquiry? So this court in Heath said the question whether at the time of an unlawful search an arrest was to occur, was inevitable because Heath was an inevitable discovery case, but was to occur, the court said in Heath that that inquiry was objective. One of the inputs into the objective inquiry was the officer's testimony as to what she planned to do. And Heath said that that officer testimony was entitled to careful consideration. The argument that you're making seems to have some force from a sort of a policy perspective in that the search is supposed to be incidental to an arrest. I think that the cases now seem to — Knowles seems to indicate that mere probable cause, which absent a decision to arrest, is not enough. And the problem also is that the police issue millions of summonses, and otherwise the rule would be an arrest incident to a summons or an incident to intent to issue a summons. Which brings me back, though, to the — and that may be the case. I don't know. I mean, this is — with Knowles, this is a relatively new — has to be dealt with. But again, the idea that the officers acted unreasonably, as Judge Chin has pointed out in this stairwell, with three individuals who admittedly were violating the law, and then one of them behaves in a way that makes the officer extremely uncomfortable. And why would that be?  The officer's uncomfortable because it's a dangerous situation. It seems to me a search is proper under those circumstances. So again, we don't dispute that Terry exists to protect the officer who feels unsafe in an evolving citizen encounter. We respectfully insist that Judge Furman was quite right. And again, my friend, my very capable friend, Mr. Allen, has not missed this argument on appeal. He hasn't renewed it because the only fact that can be culled from that constellation of facts that Judge Furman found that's even arguably suggestive that Mr. Diaz possessed a weapon in particular, which is the legal standard, is the touching of the waistband. And Judge Furman cited — When one wants to touch — when one wants to get a gun, often one reaches in one's waistband. That's where guns are. And when one wants to retrieve an ID that an officer has asked him to produce, one also reaches to one's pocket or waist. So which will it be? The officer just — it's 50-50. It's either going to be the ID or the gun. I'll just wait and see. But in the context of an encounter where, again, Mr. Diaz has not disobeyed anything the officer has ordered him to do. No one in the stairwell has disobeyed anything the officer has ordered him to do. The officer has said, get up from the stairs and move to the wall. Everyone gets up from the stairs and moves to the wall. Everyone complies. Everyone puts down their drinks. The officer says, let's see some ID. And Mr. Diaz reaches to his pocket or waist area to produce ID in response to the officer's instruction. And, again, Judge Furman does not credit that he refused to provide ID. And so the necessary implication of those findings is that Diaz is reaching for ID. Thank you. We'll hear from the government. Good morning, Your Honors, and may it please the Court. My name — Why isn't the government pressing the Terry Stopp argument? Your Honor, we made the Terry Stopp argument below. We appealed on the search incident to arrest argument. From Your Honor's questions, it seems as if we should have appealed on the Terry Stopp argument as well. But we did argue it below, and we do think that there's a basis to conclude that this was an appropriate Terry frisk, given that the defendant acted furtively. How can you get around Knowles? And probable cause to arrest is not arresting. And probable cause to arrest existed here. But this is a statute that permits either an arrest or a summons. And where there's direct testimony from the officer that she never intended to do an arrest, you can't really make an argument that this is incident to an arrest without arguing the whole point in reverse. In other words, having a search justify the arrest rather than the other way around. Your Honor, there's a clear distinction between Knowles and the facts here, and it's a distinction that about a dozen other courts have made. And we cite these cases in our brief. The Sixth Circuit's decision in Williams, the Eighth Circuit's decisions in Chauncey and Pratt, the D.C. Circuit recently decided a case. Why is that distinction made? What is there about Knowles that didn't justify a search that justifies it here? Your Honor, if I could just take a very quick step back. There's more likelihood that evidence will escape in a car and all of that. One could see a basis for a search, and yet no search is permitted under that scenario. Under longstanding precedent, there are three requirements for a search incident to arrest. First, there must be probable cause for an arrest, and that probable cause must exist before the search. Second, there must be an actual arrest. And third, that actual arrest must be contemporaneous with the search. In Knowles, the officer had already issued a citation. It's a little short-sighted in the sense that, I mean, if you have a probable cause to arrest, but you've decided not to do that, but then you conduct a search without intending to arrest or without ever planning to arrest, then isn't the search being justified by the subsequent arrest, which was never planned? How can that be right? How is that logical? Not just the contemporaneousness of it. That can't be the rule, is it? Well, Your Honor, the Fourth Amendment is very clear, or cases interpreting the Fourth Amendment are very clear, that an officer's intent doesn't matter in terms of probable cause. So, in other words — Right. No, I'm saying there's probable cause. That's a given. But you can't — mere probable cause is not sufficient, right? There has to be an arrest. Yes, there has to be an arrest. But no case has said that the intent or the rationale for that arrest has to be one offense or the other. And it would be inconsistent with the Supreme Court's cases saying that an officer can arrest someone for one offense and that that belief can be mistaken. For example, there may not actually be probable cause of the initial arrest. Well, there's no basis for an arrest on the basis of the gun until the gun was found. But there was probable cause for an arrest on the basis of New York's open container violation. Yeah, and a direct intent not to do that. That's my problem. If she had said, I wasn't sure whether I was going to arrest or not, that's a different story. But here there's direct testimony that she wasn't going to do that. I take it, just so I'm clear on your argument, if you don't mind the interruption, your point, I think, is that her intent is what we're not supposed to be talking about. Her intent is irrelevant under every Fourth Amendment jurisprudence and doctrine. It's irrelevant. Irrelevant. It doesn't matter whether she initially thought that he had violated a murder statute. That's the reason you're—it's on that basis that you are proceeding with the argument. That's correct, Your Honor. And it's that basis that this Court upheld a search in United States v. Ricard three decades ago, that the nature of the problem— In Knowles, then, it's different because still looking at it objectively, the police officer had already issued the citation. That's correct, Your Honor. Can you make that distinction here? If she'd issued the citation, then the search would have been illegal? If she had issued a citation, the search would not be contemporaneous with the arrest. The law enforcement encounter at the time the citation was issued would be over. Okay. And so— So your basic point is that you can't look at the officer's intent or a statement of her intent. Yes. And Your Honor's questions reflected this earlier. Intent is somewhat, to be perfectly frank, of a fiction. These are rapidly evolving circumstances, and intent can change from second to second. Yeah. Well, my problem also is that if you're intending— if officers go around and they issue summonses all the time, and if a search becomes routine in connection with the issuance of a summons and is justified on the basis, well, there could have been an arrest, then I think that's a consequence that we have to consider. I understand that argument, Your Honor, and I have a couple of responses. First, I think it's just not true as a matter of fact. Ricard has been in the law for 30 years, and there is not an epidemic of searches that are accompanying minor offenses. The Supreme Court— Or maybe because it's not permitted under the law. Well, Ricard was decided, I believe, in 77. Knowles was decided in 1998, and there have been no statistics or evidence that has been cited that there was an epidemic of searches that occurred in that interim period. Second, officers don't have an incentive to conduct searches incident to every minor offense, and the reason why is because under clearly established law for searches incident to arrest, they have to actually make an arrest. And as Justice Sotomayor explained in her concurrence in Jones, it's very burdensome for a law enforcement officer to make an arrest. It takes a lot of resources, and it takes a lot of time. And so officers will not want to conduct a search incident to arrest knowing that if they do so, they will have to spend the next six hours of their life taking someone to the station and having them processed. You mean a search incident to a summons? Correct, Your Honor. I apologize. But if they do a search incident to a summons and they don't find anything, they don't have to report anything. And if they find a gun, they have to report it. If they do a search incident to a summons and do not affect an arrest afterwards, and again, we're assuming that there's no tarry basis for the search, that would be a violation of the Fourth Amendment because, again, the search incident to arrest doctrine requires an actual arrest. Now, the defense in their brief belittles the argument that there's... So that's a violation of what? I mean, you know, if they don't find anything, then they... If they don't find anything, then there's no... Nobody knows anything, and that's the end of it. If they do find something, then they would make an arrest, and that arrest would be contemporaneous, and then under your rationale, that would be fine. That's correct. But if they don't find anything, Your Honor, there would be civil liability for a violation of the Fourth Amendment. And in Utah v. Streiff, which is a very recent Supreme Court case, there was a similar issue that arose with respect to an attenuation argument where someone was stopped. The initial stop was illegal, but the officers then found an open warrant and conducted a search incident to arrest for the open warrant and found contraband. And the defense argued in that case that this would allow drag nets of searches where officers could stop someone, see if there was an open warrant, and if so, everything would be okay from there on out. And the Supreme Court rejected that argument, saying that, quote, such wanton conduct would expose police to civil liability. So while the defense belittles that argument, it has been expressly adopted by the Supreme Court in other cases. In addition, the argument that there will be an incentive for additional searches to the extent that the rule in Reed is not adopted here is wrong for the further reason that it would just create a counter-incentive for more arrests. If an officer knows that if they make clear that they intend to arrest the individual, the incentive will then be, from the outset, I'm going to say, Sir, I'm arresting you for this open container violation or for this minor arrest. And as a result, you'll have more intrusion into individuals' liberty because custodial arrests will follow. And finally, this is somewhat of a moot point. The arrest is a possibility. It's an open question. And that goes back to our original discussion about whether or not the fact that there was no intent to arrest here matters. And, you know, I catch your point on that. But here, if she had issued the summons, you're saying she couldn't have done the search. And so I don't know where the incentives fall out on that basis. I mean, you know, if you don't intend to... If you leave open the question of whether there's going to be an arrest, then that's a basis for a search, as long as you intend to, or the arrest is closely contemporaneous. It's all part of the same thing. And I can see not wanting to parse, you know, every second of what happens during that exchange. But my concern here is when there's no intent to arrest whatsoever, and, you know, then you do a search, and then somehow the search is justified by the subsequent arrest, which was based on the matter that was recovered in the search. And, again, Your Honor, I would direct the court to the number of cases that we cite that have rejected that argument on the grounds that in the Fourth Amendment it would be anomalous to look to an officer's intent to conduct an arrest, to conduct a search, et cetera, and instead... No, I understand what your point is. Can I ask, if the Snyder will permit me, there's an issue before us which is nowhere near as interesting as this one, either to you or to us, apparently, but that's a sentencing issue. And my simple lead-in question is the issue, or one very similar to it, was just arguing with Beckler yesterday in the Supreme Court. Is that something where we should wait for the Supreme Court to tell us, if they will, what to do, or shall we go ahead and decide that before hearing from the Supreme Court in that case? Your Honor, the case was argued yesterday, and so a decision will presumably be released somewhat soon. That would control our decision on this, wouldn't it? Yes, Your Honor. To the extent to which they reach that question? I mean, I expect they would. Yes, and it was one of the questions presented, so it seems fairly likely that it will be reached. Your Honor, my time is up, but if I could just make one final point before I leave, and that is that the reading of Knowles that the defense requests here is a new one. It is one that has been adopted by the New York Court of Appeals in Reed, but that would be flatly contradictory with multiple other courts of appeals and state courts. And so the request that the defense is making is for this court to establish a split with other federal courts, and that is a serious request that should be taken seriously by this court. And I would just finally direct the court to the D.C. Circuit's recent en banc opinion in United States v. Powell 43F3D836, which was not cited in our briefs. Sorry, what was the site? It was 483F3D836, which was not cited in the government's brief, but which does reject the same reading of Knowles as the defense. What volume did you say? 483, federal third. So it wasn't really terribly recent. I'm sorry, it was not recent. There was also a D.C. Court of Appeals, which was very, very recent. It was decided within the last month, and that was also an en banc opinion, United States v. Lewis 2016, Westlaw 5539892, which also rejected the same reading of Knowles as the defense as proposed here. Thank you. We'll hear the rebuttal. Thank you. Thank you, Your Honor. Let me address the Terry Frisk first. So in addition to the facts discussed in my opening presentation, this court should consider that this is not a high-crime area. This search did not occur late at night, about 10 o'clock on a Saturday night. Officer Abar testified that she did... Some of us, that's late. It's relative. As the parent of a young child, it's all relative to me. Officer Abar did not testify that she observed a bulge. There was no resisting of any of her instructions. She did not testify that Mr. Diaz made a distinctive gripping motion. There were no unusual surrounding circumstances. And I can provide to this court citations of several district court decisions holding that a touch of a waistband is insufficient. United States v. Doughty 2008, Westlaw 4308123. Are these in your brief? They're not, because the reasonable suspicion issue wasn't briefed. I'm also happy to put them in a letter if the court prefers. But United States v. McCrae 2008... Why don't you put them in a letter? I will be happy to do that, Your Honor. Yes. How much time do you need to submit a letter? If the court just... Well, I suppose I can prepare a letter containing these citations promptly if the court is inclined to decide the case on the ground of reasonable suspicion. Why don't you take a week to submit something on this issue? You can go beyond the cites, and then the government can have a week to respond. Thank you, Your Honor. So turning then to Your Honor's question about the relevance of the issuance of a citation, I would say that the response is exactly what Judge Walker has identified, that if that really is the distinction, then the officer's only mistake in Knowles was issuing a citation first. If the officer had simply searched first, she could have done exactly what Judge Walker proposes. Arrest if she finds contraband, and continue with her plan to issue a citation if she doesn't. And in that situation, the government has not presented a realistic prospect of any deterrent against officers doing just that. Finally, I want to... What about the other point, that her intent is really not something that we should be looking at? Because it's not part of the objective scenario. In other words, she's confronted the guy, she could make an arrest, she doesn't make the arrest, she does the search, and then she makes the arrest. So I would direct this Court's attention to Heath, and also reiterate our position that the question is an objective one, whether an arrest was to occur at the time of the challenged search. Now, in a sense, that question is irreducibly subjective in that it depends on what an officer decides to do, but Heath says that the inquiry remains objective. One of the inputs is the officer's testimony. The officer's testimony will not necessarily be dispositive, but it's deserving of careful consideration. And so we're not asking this Court to do anything this Court hasn't already required a district court to do in a closely related context. I want to make one more brief point on the Knowles issue, which is this. The government has not endeavored to link its proposed rule to either of the Chimmel justifications. The government has not said that a search was necessary to protect officer safety, and that's because it's the danger to officer safety that arises from custodial arrest in particular that justifies an incident search. The government has not attempted to link its proposed rule to the need for evidence preservation, because, again, it is the fact of custodial arrest that motivates a suspect to destroy evidence. Where neither rationale is implicated, the government is asking for a mere entitlement, and Gant says it is anathema to the Fourth Amendment to do so. I see I'm well over time, but if I may say one word about the sentencing issue, Judge Sack, which is this. I would encourage the Court to decide the sentencing issue for two reasons. One, the Court may not reach the commentary issue. The Solicitor General urged the Court to decide retroactivity first. If the Court does so, it will not reach the commentary question. And second, as I indicated to Judge Sack, Mr. Diaz is serving a sentence that we believe today is unlawful. He has served about 20 months of straight time. The top of his correct guideline range was 21 months. And so if we are right, as the First, Seventh, and Eighth Circuits have all concluded, then Mr. Diaz will suffer irreparable injury as he continues to serve an unlawful sentence while this Court awaits a decision that may not answer the question at all. That's why I asked. Right, and that's why we'd encourage the Court to follow all three circuits that have addressed this question. Thank you, Your Honors. Thank you. We will reserve decision. And so on the letter briefs, let's limit it to the issue of Terry, Stop, Terry, Frisk, and let's limit it to five single-space pages. Yes, thank you for the opportunity, Your Honor. Thank you. And the rest of the calendar is on submission, including the motions accordingly. I'll ask the clerk to adjourn. Court is adjourned.